## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Blanche Burton

    v.

S. Pierce Walmsley, III

May 9, 1967

Case No. A-9160

By JUDGE ALEX H. SANDS, JR.

The facts, insofar as pertinent to the issues in the case, are for the most part not in dispute.

Plaintiff, in answering defendant's advertisement for domestic help, was bitten by a toy shepherd dog, owned by defendant, as she stepped through the front door of defendant's home, which had been opened by defendant. The cause of the attack is unknown. Whether the movement of certain articles in plaintiff's arms frightened the dog or whether its actions were motivated by some protective instinct is a matter of speculation.

Upon one prior occasion the dog had, to the knowledge of defendant, bitten a delivery man, but again the motivating cause of that attack, which was some two years prior to the incident here involved, is subject to speculation. Whether the act was in the spirit of protection of his mistress, defendant's wife, or whether provoked by the act of the delivery man in kicking at the dog, is not known. Nor, in this prior instance is it entirely clear whether kicking precipitated the attack or whether the attack precipitated the kick.

During the entire period of ownership of the dog by the defendant, it is conceded that he exhibited protective tendencies in regards to defendant and his wife,

while on the other hand, both defendant and his wife testified that with the exception of the one prior incident above referred to, the dog had never attacked, bitten nor threatened anyone. .

The principles of law governing this type of situation are clear. Where the animal involved is of a domestic type and does not belong to a class generically dangerous, it must be shown (a) that the animal has vicious tendencies which (b) are known or should be known to the owner before there can be liability upon the part of the latter for injuries occasioned by the animal to third persons. It would appear that the dog need not be actually of a vicious temperament to satisfy this qualification if his habits are such as to raise in an ordinarily prudent person the apprehension that the dog might injure persons other than his master. An extremely nervous and high-strung animal might pose as much of a threat to one coming on the premises of its owner as would a dog which was of a vicious nature. One indicia suggesting the possibility of a vicious nature is often the particular type dog involved. A German police dog used by the owner as a watch dog has been held an example of this type of dog. In the case at bar there is nothing in the type dog involved suggestive of any vicious tendencies. Some other basis of liability must exist before defendant can be held responsible for the acts of his dog upon the occasion here involved.

Defendant's dog, by the undisputed evidence, was of a protecting disposition and this had been known to defendant for a long while. On a prior occasion the dog had bitten a delivery man under circumstances from which the attack could well be attributed to his protective tendency although it could also have resulted from provocation.

Does this evidence establish such a propensity upon the part of defendant's dog for committing such an attack and, if so, should defendant have been aware of this propensity?

Strangely enough, helpful authority is practically nonexistent. The Annotation relied on by defendant deals solely with the adequacy of various defenses to suits over dog bites. We are not here concerned with the question of provocation for there was no provocation on the occasion

on which plaintiff was bitten and whether provocation existed at the time of the previous biting is not an issue. It might have some effect upon what significance defendant should have attached to the prior incident.

In *Domm v. Hollenbeck*, 259 Ill. 382, 102 N.E. 782 (1913), the Court felt defendant's liability to be a jury issue where the only testimony as to bad propensities was that the dog had, on a previous occasion bared his teeth and snarled at a person other than the owners and on another occasion when a witness saw the dog inside a window "put his paws on the window and jump against it" in a manner which made the witness apprehensive that the dog might attack him.

The best yardstick for application in the instant case is this expression from 3 *Restatement of Torts*, page 39:

> One who keeps a domestic animal which possesses only those dangerous propensities which are normal to its class is required to know its normal habits and tendencies. He is, therefore, required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm. Thus, the keeper of even a gentle bull must take into account the tendencies of bulls as a class to attack moving objects and must exercise the utmost care to keep his bull under complete control if he drives it upon a public highway. So, too, the keeper of an ordinarily gentle bitch or cat is required to know that while caring for her puppies or kittens she is likely to attack other animals and human beings.

Bearing in mind that defendant's dog was of a protective nature, that he had previously bitten a stranger coming upon the premises under circumstances which were equally as consistent with a reaction prompted by a desire to protect his mistress and one prompted by provocation and in view of the fact that plaintiff was neither a licensee nor a trespasser but was an invitee upon defendant's premises at the time of this incident, I feel

that the jury was justified in its finding that defendant should have known that the dog was apt to exhibit his protective tendencies in the same manner in which he had exhibited them upon one prior occasion.

The motion to set aside the verdict is accordingly overruled.